IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LABORERS' PENSION FUND and
LABORERS' WELFARE FUND OF THE
HEALTH AND WELFARE DEPARTMENT
OF THE CONSTRUCTION AND GENERAL
LABORERS' DISTRICT COUNCIL OF
CHICAGO AND VICINITY, and JAMES S.
JORGENSEN, Administrator of the Funds,

      Plaintiffs,

v.

M & J MECHANICAL CONTRACTORS, INC.,
an Illinois corporation, and MID-CONTINENT
PLUMBING, INC., an Illinois corporation, as
an alter ego and single employer with M & J
MECHANICAL CONTRACTORS, INC.,

      Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

FILED: MARCH 20, 2008
08CV1625      TC
JUDGE DER-YEGHIAYAN
MAGISTRATE JUDGE COLE

Case No.

## COMPLAINT

    Plaintiffs Laborers' Pension Fund and Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity (the "Funds"), and plaintiff James S. Jorgensen ("Jorgensen"), Administrator of the Funds, by their undersigned attorneys, and for their Complaint against defendants M & J Mechanical Contractors, Inc. and Mid-Continent Plumbing, Inc., state as follows:

### COUNT I

### (Failure To Comply With Audit)

    1.    Jurisdiction is based on Sections 502(e)(1) and (2) of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §1132(e)(1) and (2); Section 301(a) of the Labor Management Relations Act ("LMRA") of 1947 as amended, 29 U.S.C. §185(a); and 28 U.S.C. §1331.

    2.    Venue is proper pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. §1132(e)(2), and 28 U.S.C. §1391(a) and (b).

    3.    The Funds are multiemployer benefit plans within the meaning of Sections 3(3) and 3(37) of ERISA, 29 U.S.C. §1002(3) and 37(A). The Funds have offices, conduct business and administer the plans within this District. Jorgensen is the Administrator of the Funds, and has been

duly authorized by the Funds' Trustees to act on behalf of the Funds in the collection of employer contributions owed to the Funds and to the Construction and General Laborers' District Council of Chicago and Vicinity Training Fund, and with respect to the collection by the Funds of amounts which have been or are required to be withheld from the wages of employees in payment of Union dues for transmittal to the Construction and General Laborers' District Council of Chicago (the "Union"). With respect to such matters, Jorgensen is a fiduciary of the Funds within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A).

4.      Defendant M & J Mechanical Contractors, Inc. ("M & J Mechanical") is an Illinois corporation in good standing.    M & J Mechanical does business within this District and is an Employer within the meaning of Section 3(5) of ERISA, 29 U.S.C. §1002(5), and Section 301(a) of LMRA, 29 U.S.C. §185(a).

5.      The Union is a labor organization within the meaning of 29 U.S.C. §185(a). The Union and M & J Mechanical are parties to a collective bargaining agreement ("Agreement"). (A copy of the "short form" Agreement entered into between the Union and M & J Mechanical, which Agreement adopts and incorporates a Master Agreement between the Union and various employer associations, and also binds M & J Mechanical to the Funds' respective Agreements and Declarations of Trust, is attached as Exhibit A.)

6.      Defendant Mid-Continent Plumbing, Inc. ("Mid-Continent") is an Illinois corporation in good standing. Mid-Continent does business within this District and is an Employer within the meaning of Section 3(5) of ERISA, 29 U.S.C. §1002(5), and Section 301(a) of LMRA, 29 U.S.C. §185(a). Mid-Continent is being sued because, as found by the Court in Laborers' Pension Fund *et al.* v. M&J Mechanical Contractors, Inc. and Mid-Continent Plumbing, Inc., Case No. 03 C 1792 (N.D. Ill.) (Gottschall, J.) (Order dated May 22, 2007, docket no. 104) (Exhibit B hereto), Mid-Continent is a single employer with M & J Mechanical for purposes of liability under the applicable collective bargaining agreement, based on, *inter alia*, common ownership, common management, centralized supervision and control of labor relations, and interrelation of operations. As a single employer, Mid-Continent is bound by each and every one of M & J Mechanical's obligations as set

2

forth herein.

7.      The Funds have been duly authorized by the Construction and General Laborers' District Council of Chicago and Vicinity Training Fund (the "Training Fund"), the Midwest Construction Industry Advancement Fund ("MCIAF"), the Chicagoland Construction Safety Council (the "Safety Fund"), the Laborers' Employers' Cooperation & Education Trust ("LECET"), the Contractors' Association of Will and Grundy Counties (the "Will County Fund"), the Concrete Contractors' Association of Greater Chicago ("CCA"), and the CDCNI/CAWCC Contractors' Industry Advancement Fund (the "Wall & Ceiling Fund"), to act as an agent in the collection of contributions due to those funds.

8.      The Agreement obligates M & J Mechanical to make contributions on behalf of its employees covered by the Agreement for pension benefits, health and welfare benefits, for the training fund and for one or more of the other affiliated funds identified above, and to submit monthly remittance reports in which M & J Mechanical, *inter alia*, identifies the employees covered under the Agreement and the amount of contributions remitted to the Funds on behalf of each covered employee.

9.      The Agreement further obligates M & J Mechanical to cooperate with auditors designated by the Funds in conducting payroll audits to assure that all required contributions have been made to the Funds. Under Section 209(a) of ERISA, 29 U.S.C. §1059(a), and the Agreement and the Funds' Trust Agreements, M & J Mechanical is obligated to maintain records with respect to each of its employees sufficient to determine the benefits due.

10.     Notwithstanding the obligations imposed by the Agreement:

     (a)     Defendant M&J Mechanical has failed to cooperate as necessary with auditors designated by the Funds in the conduct of a payroll audit for the period from January 1, 2005 to the present.

     (b)     Defendant Mid-Continent has failed to cooperate as necessary with auditors designated by the Funds in the conduct of a payroll audit for the period from December 1, 2004 to the present.

11.     All conditions precedent to requiring defendants to cooperate with the Funds' auditors have been met.

12.     Defendants' actions described above violate Section 515 of ERISA, 29 U.S.C. §1145, and Section 301 of the LMRA. 29 U.S.C. §185.

13.     Pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. §1132(g)(2), and the terms of the Funds' Trust Agreements, defendants are liable for any amounts owed, as well as interest and liquidated damages on unpaid or late paid contributions, reasonable attorneys' fees and costs, and such other legal and equitable relief as the Court deems appropriate.

WHEREFORE, the Funds respectfully requests this Court enter a judgment against M & J Mechanical Contractors, Inc. and Mid-Continent Plumbing, Inc. requiring defendants to submit to an audit; holding defendants liable for any amounts owed to date together with all accrued delinquencies after suit, interest, liquidated damages, attorneys' fees and costs; and granting any other legal and equitable relief as the Court deems appropriate.

## COUNT II

### (Failure to Pay Employee Benefit Contributions)

14.     Plaintiffs reallege paragraphs 1 through 8.

15.     Notwithstanding the obligations imposed by the Agreement, the LMRA and ERISA, defendant M&J Mechanical has:

(a)     failed to timely report and pay contributions owed to plaintiff Laborers' Pension Fund for the period from January 1, 2005 to the present, thereby depriving the Laborers' Pension Fund of contributions, income and information needed to administer the Fund and jeopardizing the pension benefits of the participants and beneficiaries; and

(b)     failed to timely report and pay contributions owed to Plaintiff Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity for the period from January 1, 2005 to the present, thereby depriving the Welfare Fund of contributions, income and information needed to administer the Fund and jeopardizing the health and welfare benefits of the participants and beneficiaries; and

(c)     failed to timely report and pay contributions owed to Laborers' Training Fund for the period from January 1, 2005 to the present, thereby depriving the Laborers' Training Fund of contributions, income and information needed to administer the Fund and jeopardizing the training fund benefits of the participants and beneficiaries; and

(d)     failed to report and pay all contributions owed to one or more of the other affiliated funds identified above from January 1, 2005 to the present, thereby depriving said fund(s) of contributions, income and information needed to administer said fund(s) and jeopardizing the benefits of the participants and beneficiaries.

16.     Notwithstanding the obligations imposed by the Agreement, the LMRA and ERISA, defendant Mid-Continent has:

(a)     failed to timely report and pay contributions owed to plaintiff Laborers' Pension Fund for the period from December 1, 2004 to the present, thereby depriving the Laborers' Pension Fund of contributions, income and information needed to administer the Fund and jeopardizing the pension benefits of the participants and beneficiaries; and

(b)     failed to timely report and pay contributions owed to Plaintiff Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity for the period from December 1, 2004 to the present, thereby depriving the Welfare Fund of contributions, income and information needed to administer the Fund and jeopardizing the health and welfare benefits of the participants and beneficiaries; and

(c)     failed to timely report and pay contributions owed to Laborers' Training Fund for the period from December 1, 2004 to the present, thereby depriving the Laborers' Training Fund of contributions, income and information needed to administer the Fund and jeopardizing the training fund benefits of the participants and beneficiaries; and

(d)     failed to report and pay all contributions owed to one or more of the other affiliated funds identified above from December 1, 2004 to the present, thereby depriving said fund(s) of contributions, income and information needed to administer said fund(s) and jeopardizing the benefits of the participants and beneficiaries.

17.     Despite demand duly made, defendants have not paid the required contributions, liquidated damages on late paid contributions, or other sums due.

18.     All conditions precedent to requiring contributions and reports to the Funds have been met.

19.     Defendants' actions in failing to make timely reports and contributions violate Section 515 of ERISA, 29 U.S.C. §1145, and Section 301 of the LMRA. 29 U.S.C. §185.

20.    Pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. §1132(g)(2), and the terms of the Funds' Trust Agreements, defendants are liable to the Funds for unpaid contributions and related amounts, as well as interest and liquidated damages on all unpaid or late paid contributions, reasonable attorneys' fees and costs, auditors' costs, and such other legal and equitable relief as the Court deems appropriate.

WHEREFORE, the Funds respectfully request this Court enter a judgment against M & J Mechanical Contractors, Inc. and Mid-Continent Plumbing, Inc. for the amounts of contributions owed to date together with all accrued delinquencies after suit, interest, liquidated damages, attorneys' fees and costs, and auditors' costs; directing defendants to timely submit reports and upon demand by Plaintiffs submit to an audit; and any other legal and equitable relief as the Court deems appropriate.

## COUNT III

### (Failure to Pay Union Dues)

21.    Plaintiffs reallege paragraphs 1 through 8.

22.    Pursuant to the Agreement, the Funds have been duly designated to serve as collection agents for the Union in that the Funds have been given the authority to collect from employers union dues which have been deducted from the wages of covered employees.

23.    Notwithstanding the obligations imposed by the Agreement, defendant M&J Mechanical has failed to report and forward union dues deducted from the wages of employees from January 1, 2005 to the present, thereby depriving the Union of income.

24.    Notwithstanding the obligations imposed by the Agreement, defendant Mid-Continent has failed to report and forward union dues deducted from the wages of employees from December 1, 2004 to the present, thereby depriving the Union of income.

25.    Pursuant to the Agreement, defendants are liable to the Funds for the unpaid union dues, as well as reasonable attorneys' fees, as the Union's collection agent, and costs, and such other legal and equitable relief as the Court deems appropriate.

26.    Defendants' actions have violated and are violating Section 301(a) of the LMRA, 29 U.S.C. §185(a).

WHEREFORE, the Funds respectfully request that this Court enter a judgment against M &

J Mechanical Contractors, Inc. and Mid-Continent Plumbing, Inc. for the amount of the union dues owed to date together with all attorneys' fees and costs, and any other legal and equitable relief as the Court deems appropriate.

By:  /s/ N. Elizabeth Reynolds
Attorneys for Plaintiffs

Karen I. Engelhardt (3128850)
Wesley Kennedy (6188089)
N. Elizabeth Reynolds (90784815)
Angie M. Cowan (6285970)
Josiah A. Groff (6289628)
ALLISON, SLUTSKY & KENNEDY, P.C.
230 West Monroe Street, Suite 2600
Chicago, Illinois 60606
(312) 364-9400
Fax No. (313) 364-9410

March 19, 2008

# Exhibit A



### HEADQUARTERS OF
# Construction & General Laborers'
## District Council of Chicago and Vicinity

Affiliated with the Laborers' International Union of North America, A.F. of L.-C.I.O.
6121 WEST DIVERSEY AVENUE · CHICAGO, ILLINOIS 60639 · PHONE: 773-237-7337 · FAX: 773-237-7417

LOCALS 1, 2, 4, 5, 6, 25, 76, 76, 96, 118, 149, 152, 225, 269, 288, 582, 681, 1001, 1006, 1035, 1092

Robert E. Bloch
Trustee

**INDEPENDENT CONSTRUCTION INDUSTRY**
**COLLECTIVE BARGAINING AGREEMENT**



M & J Mechanical Cont

It is hereby stipulated and agreed by and between _____ herein called the "EMPLOYER", and the CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY, herein called the "UNION" representing and encompassing Local Nos. 1, 2, 4, 5, 6, 25, 75, 76, 96, 118, 149, 152, 225, 269, 288, 582, 681, 1001, 1006, 1035, 1092 and encompassing the geographical areas of the counties of Cook, Lake, DuPage, Will, Grundy, Kendall, Kane, McHenry and Boone, in the State of Illinois, together with any other locals which may come within the jurisdiction of the UNION, that:

1. **EMPLOYER,** in response to the UNION'S claim that it represents an uncoerced majority of each EMPLOYERS' laborer employees, acknowledges and agrees that the sole and exclusive collective bargaining representatives in all these craft/most each majority of laborer employees. Therefore, the UNION is hereby recognized as and continues of employment in accordance with Section 9 of the National Labor Relations Act without out least for a Board certified election.

2. The EMPLOYER affirms and adopts the Collective Bargaining Agreements between the UNION and the Builders Association of Chicago and Vicinity, the Illinois Road Builders Association, the Underground Contractors Association, the Mason Contractors Association of Greater Chicago, the Concrete Contractors Association of Greater Chicago, G.D.C.N.I./C.A.W.C.C., the Lake County Contractors Association, the Contractors Association of Will and Grundy Counties, the Fox Valley General Contractors Association, the Chicago Demolition Contractors' Association, the Illinois Environmental Contractors Association, and all other Associations with whom the District Council or any of its affiliated local unions has a validly negotiated agreement, and incorporates all agreements from June 1, 1979 together with all amendments thereto. Where an current Association agreement is negotiated, the terms of the most recent expired agreement are incorporated herein with all terms, conditions and dates extended for the duration hereof, until a current agreement exists that shall be incorporated retroactively herein. It is further agreed that where a contractor works in the jurisdiction of any local UNION, then the Association agreement covering the local UNION is herein specifically incorporated in this agreement and shall supersede the standard District Council agreements in case of any conflict between the District Council agreement and the local Association agreement. Nothing herein shall limit the jurisdiction of the Agreement to less than that provided in this Agreement.

3. The EMPLOYER agrees to pay the amounts that it is bound to pay under said Collective Bargaining Agreements to the HEALTH AND WELFARE DEPARTMENT of the CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY (the LABORERS' PENSION FUND, the CONSTRUCTION AND GENERAL LABORERS DISTRICT COUNCIL OF CHICAGO AND VICINITY TRAINING TRUST FUND), the CHICAGO AREA LABORERS-EMPLOYERS COOPERATION EDUCATION TRUST (CECET), and all other designated Union affiliated benefit funds; and to become bound by and as considered a party to the Agreements and Declarations of Trust creating said Trust Funds as if it had signed the original copies of the Trust Instruments and amendments thereto. The EMPLOYER ratifies and confirms the appointment of the EMPLOYER Trustees who shall, together with an equal number of successor Trustees, designated in the manner provided in said Agreements and Declaration of Trusts and jointly with an equal number of Trustees appointed by the UNION, carry out the terms and conditions of the Trust Instruments.

The EMPLOYER further affirms and re-establishes that all prior contributions paid to the Welfare, Pension, Training and LECET Funds were made by duly authorized agents of the EMPLOYER at all proper rates, for the appropriate periods of time, and that by making said prior contributions the EMPLOYER evidences the intent to be bound by the terms of the Trust Agreement and Collective Bargaining Agreements which were operative at the time the contributions were made, acknowledging the report form to be a sufficient instrument in writing to bind the EMPLOYER to the applicable agreements.

4. Employees covered by this Working Agreement shall retain all the work traditionally performed by members of the UNION. The EMPLOYER agrees that it will not cause any such traditionally performed work to be done at a construction site by employees other than those covered by this Memorandum of Agreement, except with the prior written consent of the UNION. Any EMPLOYER, whether acting as a contractor, general manager or developer, who contracts out or sublets any of the work coming within the jurisdiction of the UNION, shall assume the obligations of any such subcontractor for prompt payment of employees' wages and other benefits, including reasonable attorneys' fees incurred in enforcing the provisions hereof. Notwithstanding any agreement to the contrary, the EMPLOYERS' violation of any provision of that paragraph will give the UNION the right to take any other lawful action, including all remedies at law or equity.

5. In the event of any change in the ownership, management or operation of the EMPLOYERS' business by sale or otherwise, it is agreed that as a condition of such transfer or change that the new owner and management shall be fully bound by the terms and conditions of this Agreement. This Agreement is applicable to all successors and transferees of the EMPLOYER, whether corporate or otherwise. The EMPLOYER shall provide ten (10) days prior notice to the Union of the sale or transfer.

6. The negotiated wage and fringe benefit contribution rates in the various Collective Bargaining Agreements are as follows:

June 1, 1998    $29.38 Per Hour Wages
                $ 3.37 Per Hour Health and Welfare Fund
                $ 2.05 Per Hour Pension Fund
to              $ .10 Per Hour Training Fund (plus additional amounts in Association agreement)
                $ .02 Per Hour LECET (if applicable in Association agreement)
May 31, 1999    $ .02 Per Hour LECET to be deducted from MCAIF if LECET contribution is not provided in Association agreement
                $ .01 Per Hour Chicagoland Safety Council (if applicable)
                In addition, the Employer shall pay other amounts if provided in appropriate Association agreements for industry funds.

June 1, 1999    $ 1.25 Per Hour increase for the year June 1, 1999 through May 31, 2000 to be allocated between wages and fringe benefits by the Union in its sole discretion. Welfare, Pension, Training and LECET Funds contributions to remain the same unless additional sums are allocated.
May 31, 2000

June 1, 2000    $ 1.35 Per Hour increase for the year June 1, 2000 through May 31, 2001 to be allocated between wages and fringe benefits by the Union in its sole discretion. Welfare, Pension, Training and LECET Funds contributions to remain the same unless additional sums are allocated.
May 31, 2001

All additional wage rates, dues checkoff, and fringe benefits that are negotiated or become effective after May 31, 2001, shall be incorporated in this Memorandum of Agreement.

7. Effective June 1, 1998, all EMPLOYERS covered by this Memorandum of Agreement incorporating the various Collective Bargaining Agreements shall deduct from the wages of employees covered by the said contract, uniform working dues in the amount of 1.5% of gross wages, or as determined by the UNION, and shall remit monthly to the UNION office designated to the EMPLOYER by the District Council the sums so deducted, together with an accurate list of employees from whom wages and dues were deducted and the amounts applicable to each employee, not later than the 15th day of the month following the month for which said deductions were made.

8. It is the intention of the parties that such deductions shall comply with the requirements of Section 302(c)(4) of the Labor Management Relations Act of 1947, as amended and such deductions be made only pursuant to written agreements from each employee on whose account such deductions are made, which assignment shall not be irrevocable for a period of more than one year or beyond the termination date of the Memorandum of Agreement, whichever occurs sooner.

9. This Agreement shall remain in full force and effect from through May 31, 2001 (unless an applicable Association agreement is of longer duration) and shall continue thereafter unless there has been given written notice, by registered or certified mail by either party hereto, received no less than sixty (60) nor more than ninety (90) days prior to the expiration date, of the desire to modify or amend this Agreement through negotiations. In the absence of such notice the EMPLOYER and the UNION agree to be bound by the new area-wide negotiated contracts with the various Associations incorporating their into this Agreement and extending this Agreement for the life of the newly negotiated contracts.

10. The EMPLOYER acknowledges and accepts the facsimile signatures on this contract as if they were the original signatures. The EMPLOYER further acknowledges receipt of a copy of the complete Joint Working Agreement. Upon request of the UNION, the EMPLOYER shall execute another agreement that reflects the final contract settlements incorporated herein.

Dated _February 8_____, 2001
        month / day                    year

ACCEPTED:

Laborers' Local Union No. _____5_____

By: _____
CONSTRUCTION AND GENERAL LABORERS'
DISTRICT COUNCIL OF CHICAGO AND VICINITY

By: _____
    Robert E. Bloch, Trustee

Applicable Association Agreement: __BAA__
                                  __UCA__

M & J Mechanical Contr.
                    (Employer)

By: Michael Solomon Sr. (Pres.)
        (Print Name and Title)

_____
        (Signature)

9121 So. Kedzie
        (Address)

Evergreen Park, IL  60805
        (City, State and Zip Code)

708-636-5085
        (Telephone)

FEB 16 2001
RECEIVED
FIELD DEPT

TRUST FUND

EXHIBIT
A

# Exhibit B

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LABORERS' PENSION FUND, et al., | ) ) ) | |
| Plaintiff | ) ) | |
| | ) | Case No. 03 C 1297 |
| v. | ) ) | Judge Joan B. Gottschall |
| M & J MECHANICAL CONTRACTORS, INC., and MID-CONTINENT PLUMBING, INC., | ) ) | ) |
| Defendants. | ) ) | |

## ORDER

In this case, Plaintiffs Laborers' Pension Fund, Laborers' Welfare Fund of the Health and

Welfare Department of the Construction and General Laborers' District Council of Chicago and

Vicinity, and James S. Jorgenson (collectively "the Funds") sued defendants M & J Mechanical

Contractors, Inc. ("M & J") and Mid-Continent Plumbing, Inc. ("Mid-Continent") (collectively

"defendants") for violating the provisions of a collective bargaining agreement ("CBA")

between M & J and the Construction and General Laborers' District Council of Chicago and

Vicinity ("the Union"). Under the CBA, M & J is required to make employee benefit

contributions, pay Union dues, and submit remittance reports to the Union for employees who

perform certain types of work. According to the Funds, Mid-Continent is also bound by the

CBA, even though it is not a signatory to it, because the defendants are so integrated that they

should be treated as a single employer. The Funds allege that defendants violated section 515 of

the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1145 (2006), and section

301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185 (2006), by failing to

1

meet their obligations under the CBA. The Funds seek to collect the contributions and dues allegedly owed by the defendants.

After this suit was filed, the Funds' auditors performed payroll audits of M & J's records for the period between February 8, 2001, and December 31, 2004 (the "M & J audit"), and of Mid-Continent's records for the period between January 1, 2002, and November 30, 2004 (the "Mid-Continent audit"). The auditors then prepared reports purporting to reflect the amount of contributions and dues owed by defendants. Together, the reports identified thirty-four employees for whom the defendants allegedly failed to make payments required under the CBA.

Following the audits, the parties filed cross-motions for summary judgment. The defendants' motion sought a ruling that only one of the thirty-four employees identified in the audits, William Fisher ("Fisher"), actually performed work for the defendants that is covered by the CBA. On March 20, 2007, the court ruled that there were genuine issues of material fact as to whether the following employees performed work covered under the CBA: Fisher, Marco Esparza ("Esparza"), Mike Galleher ("Galleher"), Rick Maroney ("Maroney"), Brian Nape ("Nape"), Aaron Nolan ("Nolan"), Jim Richardson ("Richardson"), and Ted Togher ("Togher"). *Laborers Pension Fund v. M & J Mech. Contractors, Inc.*, No. 03 C 1297 (N.D. Ill. Mar. 20, 2007) (granting in part and denying in part defendants' motion for summary judgment). The court therefore held that the Funds could proceed on the amounts allegedly owed on behalf of these eight individuals. *Id.* The court did not rule on the Funds' motion for summary judgment at that time, but noted that the motion remained under advisement. *Id.* For the reasons set forth below, the court now grants in part and denies in part the Funds' motion.

2

The Funds have moved for summary judgment on the issue of liability. According to the

Funds, the audits conclusively demonstrate that both M & J and Mid-Continent did not make the

payments required by the CBA, and the only question remaining is the specific amount the

defendants must pay. The Funds also argue that the undisputed facts demonstrate that M & J and

Mid-Continent are so integrated that they should be treated as a single employer. *See, e.g.,*

*Naperville Ready Mix, Inc. v. NLRB,* 242 F.3d 744, 752 (7th Cir. 2001) (companies that are

"sufficiently integrated may" be treated as a single employer for purposes of liability); *Moriarty*

*v. Svec,* 164 F.3d 323, 332 ( 7th Cir. 1998) (companies that are "sufficiently integrated" may be

treated as a single employer for CBA purposes).

Defendants, for their part, do not put up much of a fight. Defendants' brief primarily

attacks the amount of liability, which is not at issue on the Funds' motion. In particular,

defendants argue that the M & J audit did not account for certain contributions and dues that

defendants paid on behalf of Fisher, the only employee whom the parties agree performed work

covered by the CBA. However, as the Funds note, defendants' response to the Funds' statement

of undisputed material facts does not cite any record evidence supporting this argument, as

required by Northern District of Illinois Local Rule 56.1(b)(3)(B). The following factual

statement by the Funds may therefore be deemed admitted pursuant to Local Rule 56.1(b)(3)(C):

"The Funds have received no payment toward the amounts shown in the M & J [audit]." Pls.'

Statement Undisputed Material Facts ¶ 13.

Moreover, the defendants have appended to their response brief a vast number of

documents that appear to be photocopied checks and ledger statements pertaining to Fisher, but

have made no attempt to distill these documents or explain what specific contributions or dues

3

the M & J audit did not take into account. It is not the court's obligation to "scour the record looking for factual disputes" in order to save a party from summary judgment. *Uhl v. Zalk Fabricators, Inc.*, 121 F.3d 1133, 1135 (7th Cir. 1997). Because defendants have failed to point to "specific evidence" demonstrating that the M & J audit improperly computed the amount owed on behalf of Fisher, the court resolves this issue in favor of the Funds. *Id.*

The Funds also point out that defendants' own admissions demonstrate that they are liable for failing to pay contributions and dues on behalf of Fisher. It is undisputed that M & J made no contributions or payments on behalf of any of its employees between May 2003 and July 2006, and that Mid-Continent has never made any contributions or payments. Yet, it appears that Fisher was employed by M & J until at least November of 2003, and it is undisputed that he was employed by both defendants between 2001 and 2004. Thus, it is clear that defendants face some liability for failing to meet the requirements of the CBA with respect to Fisher, although it is not clear at this point what the extent of defendants' liability is. *See* Fed. R. Civ. P. 56(c) (moving party is entitled to summary judgment if the facts material to an issue are not in dispute and the party is entitled to judgment as a matter of law).

With respect to the Funds' argument that defendants are a single employer, the defendants do not dispute that M & J and Mid-Continent are sufficiently integrated to be treated as a single employer for purposes of determining defendants' liability under the CBA. Rather, defendants argue that the Funds must also establish the propriety of treating M & J's and Mid-Continent's employees as a single bargaining unit in order to impose liability on Mid-Continent. Defendants contend that this determination must be made by the National Labor Relations Board ("NLRB"), not the court, citing *Laborers' Pension Fund v. Joe Cachey Constr. Co.*, 947 F. Supp.

4

365, 369 (N.D. Ill. 1996). However, the Seventh Circuit has held that the district court should

defer to the NLRB to resolve this issue only in cases where the bargaining unit determination is

relevant to liability. *See, e.g.*, *Svec*, 164 F.3d at 334-35 (finding that question of single employer

liability under a CBA did not involve representational issues or unfair labor practices and

therefore "did not touch on any area of NLRB expertise"); *Moriarty v. Larry Lewis Funeral*

*Dirs.*, 150 F.3d 773, 776 (7th Cir. 1998) (holding, in ERISA collection case, that the legal issue

of single employer liability hinged on "contracts rather than principles of labor law," and

therefore "the NLRB's principles of unit determination" were not applicable). In cases where

the non-signatory employer's liability under a CBA is a matter of contract interpretation (for

example, where the non-signatory's liability depends upon whether its employees performed

work covered by a CBA), the district court is not required to address the bargaining unit issue.

*Svec*, 164 F.3d at 334. Rather, the district court must resolve only the single employer issue and

then engage in ordinary contract interpretation to determine whether the non-signatory is liable

for breaching the CBA. *Id.* Such is the case here: Mid-Continent's liability depends on whether

it should be treated as a single employer with M & J and whether its employees performed work

that would trigger Mid-Continent's obligations under the CBA. No NLRB determination is

required for the court to answer these questions.

In this case, the undisputed facts demonstrate that M & J and Mid-Continent should be

treated as a single employer. Courts examine the following factors in determining whether two

entities are sufficiently integrated to be treated as a single employer for purposes of a CBA: "(1)

interrelation of operations, (2) common management, (3) centralized control of labor relations,

and (4) common ownership." *Svec*, 164 F.3d at 332. Defendants do not contest that these

5

criteria are met in this case, and for good reason.[1]  Michael Oldenstedt ("Oldenstedt")

incorporated both M & J and Mid-Continent on April 6, 2000, and he has been the sole owner,

president, officer, and director since that date.  Oldenstedt and his son appear to be the primary

managers of the two companies, and both men are involved in hiring and wage decisions.  M & J

and Mid-Continent both list the same one-room office as their business address, and they share a

phone line and a computer system that is used for preparing employees' checks.  Moreover,

Oldenstedt freely transferred money between the two companies; in fact, funds were debited

from M & J's bank account and credited to Mid-Continent's eighty-three times during the time

period covered by the M & J audit.  Even more importantly, these credits were the only deposits

into Mid-Continent's account during that time.  Finally, M & J and Mid-Continent had seven

employees in common between 2001 and 2004, five of whom may have performed work covered

by the CBA: Fisher, Esparza, Maroney, Nape, and Richardson.

　　　　While the majority of the issues raised by the Funds' motion for summary judgment must

be resolved in the Funds' favor, defendants do raise one meritorious argument: there are genuine

issues of material fact as to whether the employees included in the audits performed work that is

covered by the CBA.  The court's ruling on defendants' motion for summary judgment narrowed

the number of employees for which defendants may face liability to eight.  This number now

stands at seven, as it is clear that defendants face at least some liability for Fisher.  As to the

remaining seven employees, however, it is not yet clear that they performed work that would

trigger defendants' obligations under the CBA, and the Funds have provided no briefing on this

---

[1]In fact, defendants do not contest a single fact relied on by the Funds to establish that
defendants are a single employer.

6

issue. If these individuals performed work that qualifies under the CBA, then defendants will face liability for them as well because it is undisputed that defendants did not make any contributions or pay any dues for these seven employees. At this point, however, the court cannot resolve the issue, and it therefore cannot fully grant the Funds' motion for summary judgment.

In summary, the court grants the Funds' motion for summary judgment on liability with regard to Fisher. The parties agree that Fisher performed work covered by the CBA, and the undisputed facts demonstrate that defendants failed to meet their obligations on his behalf. While the extent of defendants' liability for Fisher is yet to be determined, defendants may not contest the amount owed as set forth in the M & J audit because they have failed to place the material facts in dispute on that issue. The court also finds that M & J and Mid-Continent are a single employer for purposes of liability under the CBA. The remaining issues are: (1) whether Esparza, Galleher, Maroney, Nape, Nolan, Richardson, Togher performed work covered by the CBA; and (2) the amount of defendants' liability. The court orders the parties to appear for a status conference on the date set forth in the attached minute order to advise the court how they would like to proceed on these issues.

SIGNED:

_____/s/_____

Joan B. Gottschall
United States District Judge

Dated: May 22, 2007

7